Tiller & Taylor, et al. v. McCoy.

*3. MUNICIPAL CORPORATIONS. Long acquiescence by State cures illegality of its creation.*

---

TILLER & TAYLOR ET AL v. McCOY.

1. HUSBAND AND WIFE: *His rights in her land before Constitution of 1874.*
Before the adoption of the Constitution of 1874 a husband acquired by the marriage an interest in the wife's lands which was subject to execution for his debts; unless she held it by a title expressly exempting it from his liabilities, or had scheduled it as her separate property as provided in the married woman's law in *Gould's Digest,* or sec.. 4201 *Gantt's Digest.*

APPEAL from *Jefferson* Circuit Court in Chancery.

Hon. X. J. PINDALL, Circuit Judge.

*McCain & Crawford*, for appellants.

At common law, the husband was entitled during coverture to the possession, rents, &c., of wife's land. This was a *vested* right, 2 *Black. Com.*, 433 ; 2 *Kent Com., Lecture XXVIII., *p.* 130 ; *Butler & Hargrave's note No. 280 to Coke on Littleton, sec.* 594, &c., subject to be conveyed without wife joining, and since by Statute, subject to execution. *Freeman on Ex., sec.* 186 and cases cited ; 20 *Mo.*, 269 ; 23 *Ib.* 112 ; 2 *Biney*, 91 ; 12 *Ind.*, 615 ; 25 *Ala.*, 152 ; 15 *Peck. Mass.*, 29 ; 12 *N. Y.*, 208 ; 2 *Kent Com., sec.* 28, *p.*110, 8*th Ed.*, *marg. p.* 131 ; *Harrison* v. *Lamar*, 33 *Ark.* ; *Cooley Con. Lim.*, 829 *marg. p.* 360.

This has not been changed by *Sec.*6, *Art.* 12. *Const.* 1868, which is not self-executing, but requires the passage of a registration law. No such law passed until April 28, 1873, after McCoy's rights had become vested, which the Constitution of 1874 could not divest.

Mrs. McCoy never registered or scheduled the land, and the "estate during coverture" is subject to our debt, not being held by her by any deed or will creating a separate estate. See *Berlin* v. *Cantrell*, 33 *Ark.* 611 ; *Howell* v. *Howell*, 19 *Ark.* 344 ; *Beeman and wife* v. *Cowser*, 22 *Ark.* 432.

*Martin & Martin*, for appellee.

As to the husband's right, *jure mariti*, see *Black. Com., Book* 2, *p.* 126. It was subject to voluntary and involuntary transfer. *Freeman on Cot. and Part., sec.* 73–4 : 56 *Penn, St.*, 289 ; 19 *Wis.*, 362 ; 12 *Ohio*, 79 ; 12 *N. H.*, 396 ; ·25 *Ala.*, 152. This right has been radically changed by legislation. See *Gould's Digest, p.* 765, *sec.* 1 ; *p.* 766, *sec.* 7 ; *Sanders* v. *Sanders*, 20 *Ark.*, 610 ; *Act Dec.* 31, 1860, *Ch.* 111, *Gould's Digest Laws* 1860, *p.* 84.

At the time of appellee's marriage, she held title under Constitution of 1868. See *Art. XII., sec.* 6. The first clause of this section vests the title in her exclusively and absolutely "so long as she may choose," but makes no provision for manifesting that choice, save by intervention of the Legislature. See *Act April* 28, 1873 ; *Gantt's Digest, sec.* 4193 *and* 4201. The terms *registered* in the Constitution of 1868 and *recorded* in act 1873 were only intended to compel such "record evidence" as was contemplated by act 1860.

*Con. Ark.*, 1874 *Art.* 9, *sec.* 7 did away with necessity of scheduling real property by a married woman, and by implication repealed all existing laws on the subject matter. 10 *Ark.* 590 ; 31 *Ark.*, 19.

The proper construction of the provisions of the Constitutions of 1868, 1874, and acts of the Legislature is, that they abolished the husband's rights by virtue of the marriage, leaving only courtesy *consummate*, on death of wife. Hence McCoy, at the institution of this suit, had not, nor has he now, any interest in the land, subject to execution. 54 *N. Y.* 280 ; 1 *C. E. Green*, 97 ; 2 *Vroom*, 244 ; 7 *Jones, N. C.*, 161 ; 51 *Ills.*, 226 ; 2 *Mich.*, 93.

ENGLISH, C. J. Bill by Mrs. Sallie E. McCoy against John M. Clayton, sheriff, and Tiller & Taylor, execution creditors of her husband, to enjoin the sale of land claimed by her as separate property.

The material facts in the case as shown by the bill, answer, and an agreement made by the parties on the hearing, are in substance :

That Mrs. McCoy inherited the land in question from her father, Hiram Riggins, who died intestate in 1860, possessed of the land, leaving her his sole heir ; and she was in posses-

Tiller & Taylor, et al. v. McCoy.

sion of the land after his death down to the time it was levied on by Sheriff Clayton under an execution in favor of Tiller & Taylor against her husband.

She intermarried with H. A. McCoy in June, 1872, by whom she had a child born alive in May, 1875, which died shortly after its birth.

The land was never scheduled as her separate property. Her husband had never assumed control or management of it, except as her agent, and as such had rented it to others from year to year.

On the first of January, 1875, her husband, H. A. McCoy, executed a note to Tiller & Taylor for $150.00, bearing ten per cent. interest, and due in the following January.

On April 7, 1876, they recovered a judgment against him on the note before a Justice of the Peace, an execution was issued thereon, and returned *nulla bona.* On the nineteenth of October, 1879, a transcript of the judgment, &c., was filed in the office of the clerk of the Circuit court of Jefferson county, entered in the judgment docket, and an execution issued thereon, which Sheriff Clayton levied on the interest of the execution debtor in the land in question, and advertised it for sale.

The bill was filed by Mrs. McCoy to enjoin the sale, and she alleged that other creditors of her husband would follow the example of Tiller & Taylor, and subject her to a multiplicity of suits, &c.

A temporary injunction was awarded on the filing of the bill, which, on the hearing, was made perpetual by final decree, from which defendants appealed.

1. HUS-BAND AND WIFE: His rights in her land before Constitution of 1874. At common law the husband, by marriage, acquired the right to the possession, and rents and profits of his wife's land during coverture, which was a free-hold estate, and which he could sell or lease without her consent.

So he became tenant by courtesy, and entitled to an estate for his life, if there was issue born alive of the marriage, and he survived the wife.

The estate of the husband in the wife's land, was subject to execution. *Freeman on Executions*, sec. 186; *Gantt's Dig.*, sec. 2630.

The marriage between appellee and the execution debtor occurred in June, 1872, when the constitution of 1868 was in force. By section six, Article XII of that constitution: "The real and personal property of any female in this State, acquired either before or after marriage, whether by gift, grant, inheritance, devise, or otherwise, shall, so long as she may choose, be and remain the separate estate and property of such female, and may be devised or bequeathed by her the same as if she were a *feme sole*. Laws shall be passed providing for the registration of the wife's separate property, *and when so registered*, and so long as it is not entrusted to the management or control of her husband, otherwise than as an agent, *it shall not be liable for any of his debts, engagements, or obligations.*"

No scheduling act was passed under this section of the constitution, until the act of twenty-eighth April, 1873, was passed. *Gantt's Dig.*, secs. 4193, 4201.

But by sec. 16, Art. XV of the constitution of 1868, laws then in force, not in conflict with its provisions, were continued in force until otherwise provided by the Legislature, &c.

From the adoption of the constitution of 1868, until the passage of the scheduling act of twenty-eighth April, 1873, chap. III, Gould's Digest, title MARRIED WOMEN (except so much as relates to slaves) was in force. *Berlin* v. *Cantrell*, 33 *Ark.*, 618; *Humphries* v. *Harrison*, 30 *Ark.*, 85; *Hydrick* v. *Burke, Ib.*, 126.

By section 7, chap. III, Gould's Dig., a married woman

was required to schedule her property in the Recorder's office of the county where she resided, in order to protect it from her husband's debts; except (by sec. 8) the deed bequest, grant, decree or other transfer of property to her, expressly set forth that it was to be held by her exempt from the liabilities of her husband, &c. *Humphries* v. *Harrison, sup.; Howell* v. *Howell, ad.,* 19 *Ark.,* 344; *Beeman and wife* v. *Cowser, et al.,* 22 Ark., 432.

Appellee did not schedule her land as required by the act in *Gould's Digest*; and she held it by inheritance, and not by any conveyance, or bequest, &c., showing that it was to be exempt from liabilities of her husband.

Nor did she cause the land to be recorded in her name as required by the act of twenty-eighth April, 1873. *Gantt's Dig.,* sec. 4201.

The constitution of 1874, was adopted after the marriage, and after the husband had acquired thereby a vested estate in the wife's land. See *Ward* v. *Estate of Ward,* 36 *Ark.,* 718; *Roberts & wife* v. *Wilcoxen & Rose, Ib.,* 355, as to estates acquired by married women since the adoption of present constitution.

The decree must be reversed and the bill dismissed.